UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN WALONOSKI,                     :
       Plaintiff,                        :
                                              :
       v.                                : Case No. 3:07-CV-00198 (PCD)
                                              :
GOODRICH PUMP & ENGINE               :
CONTROL SYSTEMS, INC.,               :
       Defendant.                        :


**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Karen Walonoski, Executrix of the Estate of Brian Walonoski, brings this action against Defendant Goodrich Pump and Engine Control Systems, Inc. alleging violations of Brian Walonoski's rights under the Family and Medical Leave Act, the Connecticut Family and Medical Leave Act and the Employee Retirement Income Security Act, as well as a violation of the terms and conditions of the Defendant's policy and procedure manual. On June 2, 2008, Defendant moved for summary judgment [Doc. No. 42]. On July 28, 2008, Plaintiff filed a cross-motion for summary judgment [Doc. No. 48]. For the reasons stated herein, Plaintiff's motion is **denied** and Defendant's motion is **granted**

**I. Plaintiff's Motion for Summary Judgment.**

Plaintiff's Motion for Summary Judgment is hereby **denied.** Plaintiff's two page motion was untimely[1] and did not comply with the Federal Rules of Civil Procedure or the Court's local

---

[1]Without cause or explanation, Plaintiff's July 28, 2008 Motion was filed almost two months after the June 2, 2008 deadline for dispositive motions.

rules**.**

## II.  Background

Plaintiff failed to file a Local Rule 56(a)(2) statement and instead referred the court to Defendant's Local Rule 56(a)(1) statement: "since we are in basic agreement on the factual background of this case Walonoski follows and refers to the Rule 56 statement submitted by Goodrich." (Pl.'s Memo. in Opp. to Summary Judg., unnumbered.)  Therefore,[2] the following is taken from Defendant's 56(a)(1) statement, which is deemed admitted.

The deceased, Brian Walonoski (hereinafter referred to as "Plaintiff"), had Cystic Fibrosis since birth.  Defendant Goodrich Pump and Engine Control Systems, Inc. ("Goodrich") was aware of Plaintiff's disease.  Goodrich's predecessor company hired Plaintiff as a draftsman in 1981.  In 1986 or 1987, Plaintiff resigned from Goodrich after receiving his bachelor degree in mechanical engineering.  In October 1999, Defendant re-hired Plaintiff as a design engineer.  A design engineer creates components for pumps used primarily in airplanes or helicopters.  It is a more advanced position than a draftsman.

During his employment by Defendant, Plaintiff took leave under the Family and Medical Leave Act ("FMLA"). (Walonoski Depo. at 42, 43.)  Plaintiff admits that prior to his termination he was not denied leave or disability insurance. (Id. at 57.)  He did not feel that Goodrich discriminated against him because of his disability.

When he returned to Goodrich in 1999, William Dalton, a Design Manager, became Plaintiff's supervisor.  Dalton had concerns regarding Plaintiff's ability to successfully perform

---

[2] unless otherwise noted

his job as a design engineer. Dalton noticed that despite Plaintiff's degree, he did not possess the necessary engineering skills. Dalton expressed these concerns to Plaintiff and offered him the opportunity to perform less demanding design work, instead of engineering work. Plaintiff accepted the offer. Despite a grade level reduction in his job title, Plaintiff's salary was not changed. (Walonoski Depo. at 85.) Plaintiff actually agreed with his supervisors that he was not fully competent at design engineering and felt more comfortable performing design work. (Id.)

Walonoski continued to receive a design engineer's salary, including raises, until early 2005. At that time, Defendant hired Brian Barker as Vice President of Engineering. Barker analyzed the engineering employees' duties, salaries and performance. When the analysis showed that Plaintiff did not perform the work for which he was salaried, Barker placed Walonoski and two other employees on performance improvement plans ("PIP") to assist them in acquiring the skills necessary to be a competent design engineer.

On April 21, 2005, Ken Lowell (Plaintiff's manager at the time) and Dalton presented Plaintiff with a written PIP. This ninety-day plan listed specific tasks representing different engineering skills that Walonoski was to complete each week. (Ex. 5.) A few weeks into the PIP, Plaintiff was offered the option of completing the plan or accepting a lower-paid position for design work. Although he was not confident of his ability to meet the PIP's objectives, Walonoski elected to continue with the plan. (Walonoski Depo. at 108-11.)

Lowell met with Plaintiff on a weekly basis regarding his progress on the PIP. By June 10, 2005, Plaintiff was falling behind the weekly benchmarks and making mistakes on the required tasks. Although Plaintiff believed that his health was interfering with his abilities, he did not share this concern with of his supervisors. Walonsoki admits that he did not successfully

complete the tasks due July 22nd or finish the tasks due August 1.  By late July, Plaintiff was aware that he was not meeting many PIP objectives. (Walonoski Depo. at 132-137.)  Although Plaintiff knew that he was allowed to ask for help, he did not want to "bother" his colleagues.  By August 1 he still did not have the knowledge required of a Goodrich design engineer. (Id. at 139.)

On Monday August 1, 2005, Lowell, Dalton and Walonoski met to discuss his PIP tasks due that day.  Jocelyn Feder, Human Resource Manager, also attended the meeting because Plaintiff's termination had become likely.  Walonoski had not completed the two tasks assigned for August 1, citing not wanting to "tie people up" by asking questions as the explanation for his failure. (Ex. 10).  Lowell told Plaintiff that this reason was unacceptable and that he must complete the August 1st tasks by Friday, August 5.  Walonoski understood that he would be terminated if he failed to meet this deadline. (Walonsoki Depo. at 140.)

On Wednesday August 3, Lowell informed Feder that Plaintiff was still not meeting his objectives.  They concluded that he would be terminated on Friday August 5th at a meeting that Dalton would also attend.  On August 5th, however, Dalton was absent and the meeting was rescheduled for Monday August 8th.

In May 2005, Walonoski had requested a letter from his physician, Dr. Knauft, allowing him to stop working and collect long term disability benefits.  However, Plaintiff did not receive this letter until August 8, 2005.  Furthermore, he did not inform any Goodrich employees of his intentions concerning leave or disability until August 5, 2005.

On Friday August 5th at approximately 3:30p.m., Plaintiff spoke to Dory McDowell, the Goodrich nurse.  He informed her that he planned to leave work and apply for long term disability.  She suggested that he consider applying for FMLA leave instead.  As the benefits

employee who usually distributed FMLA applications was not at work, McDowell contacted Feder, who gave Plaintiff the required paperwork that same afternoon. However, FMLA paperwork requires a Doctor's signature and Plaintiff therefore did not complete the paperwork or submit the application that same day. McDowell maintained Plaintiff's confidentiality with respect to his medical conditions.

On Monday August 8th, Defendant terminated Walonoski for failure to meet the requirements of his PIP, including the tasks originally due August 1. (Ex. 10.) On August 9, 2005, Plaintiff submitted a request for FMLA leave to Defendant. At the time he submitted this request, Plaintiff knew that he was no longer employed by Defendant. He also testified that he did not plan to ever return to work due to his health condition. (Walonoski Depo. at 153.) On August 26, 2005, Plaintiff was informed that his requests for FMLA leave and short term disability insurance were denied. Plaintiff did not appeal.

Plaintiff had a long-term disability insurance policy ("LTD"), offered through Goodrich. The policy's summary plan description sets forth ERISA appeal rights. However, Plaintiff never applied for LTD. After his termination, Plaintiff applied for social security disability and within six months was "on state disability." Sadly, Mr. Walonoski died in December of 2007.

### III. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment

is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence

in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("when reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

IV.  **Discussion of Defendant's Motion for Summary Judgment**

    A.  **Count I: Federal and State Family and Medical Leave Acts**

Plaintiff's complaint alleges that Defendant violated his rights under the Family and Medical Leave Act ("FMLA") as well as the Connecticut Family and Medical Leave Act,[3] Conn. Gen. Stat. 31-55kk *et seq*. However, Plaintiff's memorandum in opposition to summary judgment does not clearly allege how Defendant violated Plaintiff's rights under these statutes, instead referring generally to Plaintiff's contractual rights.

Defendant does not dispute that Plaintiff was disabled. Sadly, Plaintiff clearly had a debilitating medical condition and the facts of this case show that Plaintiff experienced unfortunate hardships. This ruling is not intended in any way to minimize those hardships but is focused solely on the relevant law. Plaintiff spends much of his memorandum arguing that Defendant knew of his disability. However, Plaintiff fails to explain how Defendant's

---

[3] Plaintiff claims that Defendant violated the "Connecticut Family and Medical Leave Act, General Statute 31-51(a)." The Court will assume that Plaintiff intended to claim a violation of the Connecticut Family and Medical Leave Act actually found at Conn. Gen. Stat. § 31-55kk *et seq*.

knowledge is legally relevant. Whether or not Defendant knew of Plaintiff's disability, if Plaintiff did not apply for FMLA while Defendant's employee, he was not entitled to leave.

Plaintiff seems to argue that he was entitled to FMLA leave because he received the forms on August 5th, when he was still Defendant's employee. (Pl.'s Mem. in Opp. to Summ. Judg. at unnumbered.) Plaintiff submits that receiving the forms on August 5th, obtaining Dr. Knauft's signature on August 8th, and submitting the forms – after his termination -- on August 9th is *defacto* compliance with the application procedure. However, Plaintiff cites no precedent to show that receiving, but not submitting, an application while still an employee amounts to "defacto compliance" or that "defacto compliance" can entitle an employee to benefits under the FMLA.

The Connecticut Family Leave Act is analyzed according to the jurisprudence on the Federal Family Leave Act. Cendant Corp. v. Commissioner of Labor, 276 Conn. 16 (Conn. 2005) ("the legislature made a concerted effort to harmonize the state and federal leave provisions following the passage of FMLA in 1993. [citations omitted]  The legislature's initiative is reflected in an explicit statutory directive in the leave statute that ensures that its provisions will be interpreted to be consistent with FMLA.").  Therefore, the following analysis applies to Plaintiff's claims under both the Federal and State statutes.

In order to withstand summary judgment, Plaintiff must show that (1) he is an eligible employee under the FMLA, as defined in 29 U.S.C. § 2611(2); (2) defendant is an employer under the FMLA, as defined in 29 U.S.C. § 2611(4); (3) he was entitled to leave under the FMLA, as defined in 29 U.S.C. § 2612(a)(1); and (4) defendant improperly denied him leave under the FMLA.  Spurlock v. NYNEX, 949 F. Supp. 1022, 1033 (W.D.N.Y. 1996); see also

Vicioso v. Pisa Bros., Inc., 1998 WL 355415 (S.D.N.Y. 1998).

Plaintiff's claim fails the first prong of this test. When he applied for leave he was a former employee, not an eligible employee as defined in 29 U.S.C. § 2611(2). A former employee cannot be eligible for "leave" from a place where is he no longer employed. Furthermore, a request for leave does not entitle an employee under performance review to job security.[4] The decision to fire Plaintiff was made when he did not complete the PIP tasks due August 1, before he asked for FMLA application. (Feder Aff.¶¶ 8-9.) Even if Plaintiff had applied for FMLA while an employee that application would not have entitled him to employment notwithstanding management's unrelated decision to terminate him.

In addition, there is simply no evidence that Defendant denied Plaintiff the opportunity to apply for FMLA when still an employee. In his deposition, Plaintiff testified that he had intended to apply for FMLA since May 2005, but was waiting for the necessary Doctor's note. (Walonoski Depo. at 113.) Plaintiff admitted that he did not tell any of Defendant's employees of his intention until August 5, 2008. (Id. at 126, 145-46.) On that date, he told Defendant's nurse that he wished to apply for leave and was provided with the necessary paperwork. (Id. at 151.) Plaintiff testified that he did not submit this paperwork until after he was terminated, not because of any obstruction by Defendant, but because "I had to have doctors or somebody else filling it out too. So, I couldn't do it in the same day." (Id. at 151.) Accordingly, summary judgment as to Count I is **granted,** as Defendant did not violate Plaintiff's right to medical leave.

---

[4]Nothing in this section shall be construed to entitle any [restored] employee to-- "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).

**B. Count Two: Employee Retirement Income Security Act**

Count Two of the Amended Complaint alleges that Defendant violated Plaintiff's rights under the Employee Retirement Income Security Act ("ERISA") "in that they denied him short term disability and the opportunity to apply for long term disability." (Compl. ¶ 35.) However, in his opposition to summary judgment, Plaintiff inexplicably argues that there are no ERISA issues involved, but that he was denied long term disability as a contractual right. (Pl.'s Mem. in Opp. to Summ. Judg. unnumbered) In its ruling on Defendant's Motion to Dismiss, the Court ruled that Plaintiff's state law claims relating to Goodrich's short and long term disability plans are pre-empted by ERISA. [Doc. No. 30 at 5.] Plaintiff does not cite any law or precedent that questions this ruling or supports his claim that he was denied contractual rights. Therefore, this count will be analyzed under ERISA, as alleged in the pleadings.

Plaintiff admits that he never applied for long term disability and gives no evidence to support his claim that he was denied the opportunity to do so. Plaintiff was denied short term disability, and may challenge that denial under ERISA. However, Plaintiff admits that he applied for short-term disability after the termination of his employment. (Walonoski Depo. at 151-154.) He was therefore correctly denied short-term disability on the basis of ineligibility. The Goodrich Corporation Short-Term Disability Plan Description clearly states: "your participation automatically ends on the earliest of the following dates, on the date of termination of employment by termination of the employer-employee relationship." (Goodrich Short Term Disability Plan Description, Ex. 13 at 1.) Accordingly, summary judgment as to this count is **granted,** as the plan administrator correctly denied Plaintiff's application. (Ex.12.)

**C. Count Four: Violation of Goodrich's Policy and Procedures.**

In his opposition to summary judgment Plaintiff argues that he made "every reasonable effort to apply while an employee for LTD and FMLA," claiming that he filed for FMLA on August 9, instead of 8, only because of the absence of a Goodrich employee. (Pl.'s Mem. in Opp. to Summ. Judg. unnumbered) (Id.)

However, Plaintiff's factual arguments are completely unsupported by the record. Plaintiff's deposition testimony illustrates that he never applied for long term disability and the only effort he made to apply for FMLA or Short Term Disability while still an employee was his request for an FMLA application on August 5th. Plaintiff testified to no other "reasonable efforts" to apply for benefits while an employee. Furthermore, despite the absence of a Goodrich employee, Feder personally afforded Plaintiff the appropriate forms the day of his request. (Feder Aff. at 9,10.) Plaintiff testified that delays were caused by his doctor, not his employer. (Walonoski Depo. at 113, 151.)

Plaintiff gives no explanation as to how his allegations, even if true, amount to a violation of Defendant's policies. The one case he cites, UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358 (1999), is irrelevant. There is no evidence that Plaintiff violated the terms or conditions of the Goodrich Policy or Procedure Manual. (See Ex. 2.) Furthermore, Goodrich's employee handbook does not constitute an express or implied contract upon which an employee can base a claim. On October 18, 1999, Plaintiff signed an "acknowledgment of receipt and intent to read." It states: "I understand that neither [the company] handbook, company practices or other communications create an employment contract or term." (Ex. 3.) Connecticut courts have held that such a disclaimer is effective and protects the employer from contract liability based on the

terms in its handbook.  See Davis v. Liberty Mutual Ins. Co., 218 F. Supp. 2d 256, 260 (D. Conn. 2002) ("There is a substantial body of Connecticut state and federal court decisions granting summary judgment in cases where the personnel manual at issue in a breach of contract claim contains an express disclaimer.");Cowen v. Federal Expr. Corp., 25 F. Supp. 2d 33, 37 (D.Conn.1998); Manning v. Cigna Corp., 807 F. Supp. 889, 895 (D. Conn. 1991).  Here, the disclaimer is effective because it is clear, expressly stated, and Plaintiff acknowledged his understanding.  See Cowen v. Federal Expr. Corp., 25 F. Supp. 2d 33, 37 (D. Conn. 1998). Accordingly, summary judgment is **granted** as to this count.

### IV.     Conclusion

For the reasons stated above, Defendant Goodrich's Motion for Summary Judgment [Doc. No. 42] is **granted** and Plaintiff Walonoski's Motion for Summary Judgment [Doc. No. 48] is **denied.**  The clerk is directed to close the case.

SO ORDERED.

Dated at New Haven, Connecticut, this  5th  day of March, 2009.

                                                      /s/
                                       Peter C. Dorsey, U.S. District Judge
                                       United States District Court